316-0636, People of the State of Illinois, Appellee by Richard Leonard v. Willie Wells, Appellant by Brett Zeed Mr. Zeed Good afternoon, Your Honors, Counsel, and members of the courtroom. Thank you for having me. My name is Brett Zeed, and I represent Willie Wells, and I'm from the State Appellate Defender's Office. This is the court. Your Honors, the U.S. Supreme Court has made clear that youth matters in sentencing because of the special characteristics of juvenile offenders. They are far less culpable than adults for the same crimes, and they are also far more capable of rehabilitation. And furthermore, juveniles who commit even heinous crimes are capable of that same rehabilitation and reintegration into society. Willie Wells, who was just 16 at the time of these non-homicide offenses, and was sentenced to 61 years in prison, more than six decades in prison, he deserves a chance to prove just that, that he is capable of maturity, capable of being rehabilitated and becoming a productive member of society. In this case, he was prejudiced by his inability to raise his eighth amendment claim in his initial post-conviction petition when he was denied for him to file that, and by also not having a hearing where he presents specific evidence regarding his juvenile characteristics and youth that was not specifically considered or presented at his initial sentencing hearing. Now, at that sentencing hearing, the trial court did mention Willie's age, but it did not examine the specific familiar factors or variants of familiar factors, and specifically didn't consider how his youth affected his culpability and his prospects for rehabilitation. And some of those hallmark considerations are a juvenile's immaturity, impetuosity, failure to appreciate risks and those consequences from taking those risks, home life, peer pressure, family history, all these things that the Supreme Court and Miller and Graham and Montgomery and other Illinois cases have also recognized. Now, the statement's brief seems to acknowledge, or at least doesn't specifically say that this was not a de facto life sentence. But assuming that's not the end of the matter here, this 61-year sentence was indeed a de facto life sentence. If you look to the Illinois Supreme Court decision on race regarding when a sentence is a de facto life sentence, it's functionally equivalent to life without parole if it's not as, quote, a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. So a juvenile's sentence would have to do more than just ensure that he will survive it or get out at a very advanced age. Here, the very earliest that Mr. Wells could be released would be at age 61 and a quarter, essentially. That's assuming he gets all the good time credit he may fall apart for. Now, at that stage in his life, the question becomes how do we look at life? It's our position and the position of, and clearly there's no question in the United States Supreme Court's decisions, also in the Illinois Supreme Court's decision on race, that life should be looked at not just as a physical body outside of jail, outside of confinement. There's language in Graham regarding what a meaningful opportunity to obtain a release and to re-enter the community, and that's language such as a chance for fulfillment outside of prison walls and reconciliation with society, a chance to reclaim their value and place in society. These go beyond just a physical release from prison. It envisions a sort of redemption and belonging in society. In that regard, looking at what Willie's life in the Menard Correctional Center has been like and will be like, assuming that he lives to age 61 and sees release, is that he'll have lived his entire adult life in prison, where because he went in as a juvenile and because he has such a lengthy sentence, he's very unlikely to receive educational training, employment training, any type of skills that would be useful to him when he's released from prison. And if he's not released until he's 61, he's going to be released into a world where he's not going to have a job training. It's going to be very difficult to find a job. He won't qualify to go to college because he couldn't apply to get loans. And although he does have a lot of family here in Fort Whitehouse to support him, in 33 more years, we don't know what that situation is going to be. He's going to be released into a world where it's going to be very difficult for him to have a meaningful chance at a life where he's fully integrated into the society. And piggybacking on that, just looking at what legislatures across the country are doing in response to these U.S. Supreme Court cases that have recognized that juveniles are different. Their brains are not fully developed until age 25 where they reach a point where they can appreciate risks and they are much more apt to be rehabilitated. And again, studies show that most people age out of even the most violent crimes by their early 30s. In the Illinois legislature, there's House Bill 531 that has recently passed both chambers of the House, of the General Assembly, and it envisions a world system for juveniles. And this is in line with what a lot of states are doing to address this difficult issue. Because obviously, courts have differed as to what a de facto life sentence is and what specifically they should look for in deciding that. But if this bill becomes law, then those under 21 who commit a non-homicide offense, like the ones that Willie was convicted of, would be eligible for parole after 10 years in prison. So if Mr. Wells was here today having just been convicted of this crime, he could potentially be eligible for parole after spending over 10 years in prison. He's already been in for 13 and faces the prospect of three more decades in prison. If this court doesn't have any questions, I can wrap it up. Mr. Wells respectfully requests that this court find that a 61-year sentence isn't a de facto life sentence because it doesn't provide him a meaningful opportunity to prove his maturity and rehabilitation potential. And this case should be remanded either for a new sentencing period or the alternative being remanded for second stage post-conviction proceedings. So it can be appointed a counsel who can help him set forth evidence, to give more evidence in front of the court regarding his beautiful characteristics and whether he's an important role model. The only way that a sentence such as Willie's would be constitutional now, or pass constitutional muster pursuant to Miller and Graham, is that one, the court has to consider all these Miller variants, or specifically the Miller factors that's now codified in Illinois sentencing law. And two, there has to be a finding that he's incorrigible. He's incapable of being rehabilitated. There was no such finding in this case in the sentencing period that he was incorrigible. And again, there was no specific, those Miller factors were not explored. And that makes sense to a degree because obviously the sentencing period took place before Miller, before Graham, before this kind of title shift. And how our society and how judges look at and treat offenses and how they are, and then the responsibility of those offenses and how they should be sentenced. So you're asking us to answer two questions, essentially. One is that this is in fact a de facto life sentence. Yes, Your Honor. Which would be a factual determination. Well, it would be a determination of looking at the length of a sentence, a 61-year sentence, and then looking at what his life in prison has been, and what it would be if he were to be released at that age, 61, after 44 years in prison, and whether that is a meaningful opportunity to prove, to demonstrate his maturity and his rehabilitation. Okay, but the initial question that we have to determine is whether, let's see, it's Davis makes the legal findings applicable to him. Well, in Davis, the 2014 case, Supreme Court held that cases like this where it is a de facto life sentence, the de facto life sentence is the Miller protection filed retroactively, and it doesn't meet the cost test as far in the context of a successive post-conviction petition. Okay, and then the second question is, if we determine that this is a de facto life sentence, then the application of the Miller factors in this case? Yes, and that happened either at a new sentencing hearing or at the other. That's one alternative that the courts have taken, and an alternative is to remand for second stage post-conviction proceedings where it would be assigned to counsel and there would be an evidentiary hearing that would get sent around whether Willie was incorrigible, and if they find that he was incorrigible, then the sentence would stay out at the end of the matter. Thank you. Thank you very much, Your Honor.  May it please the court, counsel, counsel makes more of a policy argument that the concrete issue before this court is whether the trial or preferably denied defendant motion does lead to file a successive post-conviction petition. The standard of review is to know about, is the defendant's burden at the trial court to show both cause and prejudice. The defendant must demonstrate the cause for his failure to bring the claim in his initial post-conviction proceedings,  causes for defiance, the defendant must identify an objective factor that impeded his ability to raise the specific claim during his initial post-conviction proceedings. In his successive petitions, he simply argued that he showed cause because there was a change in the law. He never stated what that change was or any case was. The defense counsel correctly states that he was sentenced and he filed his initial post-conviction petition before Miller was decided. That's our position that the defendant failed to show cause because he could have cited Miller prior to the trial judge denying his initial post-conviction petition. I'll go through the timeline here. The defendant filed his initial post-conviction, his pro se post-conviction petition on July 13, 2009. He filed a pro se motion to supplement his petition on November 28, 2011. The U.S. Supreme Court decided Miller on June 25, 2012. The defendant filed a motion to dismiss his initial post-conviction petition shortly after on December 20, 2013. The defendant also filed a motion, a supplemental motion, to dismiss the defendant's supplemental claims after that but prior to the trial judge denying the initial petition. The trial judge denied the initial petition and also the defense counsel filed a petition, an amended petition during that time. The trial judge denied all of those petitions on February 5, 2015. So between when Miller was decided on June 25, 2012 until the defendant's post-conviction petition was dismissed on February 5, 2015, the defendant had more than two and a half years to file another supplemental petition adding Miller to his petition, but he failed to do so. So he had the opportunity to file another motion, but he failed to do so, probably because he didn't amend his petition, because he probably didn't know Miller was decided until later when he filed his supplemental petition. So as you know, ignorance of the law is no excuse. Mr. Leonard, he doesn't have a cause of action under Miller. His cause of action didn't arise, or his basis for appealing didn't arise until 2017 when the Supreme Court decided that a de facto life sentence would also require the analysis under Miller. Yes, but he could have also filed his petition under Miller, because even though Miller didn't decide the de facto life sentence, the Supreme Court, Illinois Supreme Court, and Reyes said it was a de facto life sentence that applies under Miller, he still could have added Miller and argued that his de facto sentence was in fact a natural life sentence, even though what you say is true. So he had the opportunity to argue that based on Miller, but he failed to do so, so he failed to show cause. Now with respect to prejudice, Miller and his prodigy never said that a juvenile could not be sentenced to a natural life sentence or a de facto life sentence. Instead, most cases simply said that the legislature could not make mandatory minimum sentences for juveniles that would result in a natural life or de facto life sentence. Cases say that the trial judge can still sentence a juvenile to a natural life sentence or a de facto life sentence if the trial judge uses his discretion when sentencing the defendant. Here the defendant faced a sentence of 22 to 17 years in prison. He was convicted of two class act sentences. The trial judge weighed the evidence in this case and the nature and circumstances of the case and he decided to give the defendant the maximum 30 year sentence for the aggravated criminal sensual assault and because of that conviction, he was to serve a consecutive sentence for the aggravated... Was it the kidnapping charge? So in this case, the defense counsel talks about these cases should be, should be sentenced to such a long sentence even if they're found incorrigible or whether they're correctly, appropriately correct. Well this is a case that cries out for such a case. Just briefly over the fact that this case, the defendant and his co-defendant were out driving a vehicle and they stopped another vehicle with a single female. The defendant got out of the car and put a gun towards this female's head. They slide over into the passenger seat. He drove the car and the defendant's friend, another car, got into the vehicle. The defendant got in the back seat and forced this victim to perform oral sex on him. They stopped a little later and then the defendant made the victim perform oral sex on him again while his co-defendant had vaginal intercourse. They eventually met up with some of their friends in another car. They decided to take this woman to an abandoned house where there were five or six or possibly seven men skidding around in a circle and she was unclothed and she was made to perform oral sex on all of these five or seven men. She was told that other women who did not agree were either thrown in the river and drowned, shot or buried. After that, it was not a doubt that she was made to get on her hands and knees naked where the men took turns having vaginal sex with this woman. This is a horrendous crime. I can't think of any more crime that would be worse than this. Other than maybe torturing a victim and then killing the victim. So this is one of those cases where the defendant is incorrigible and it's de facto life sentence even if you can say that was proper in this case. I believe that's all I have. If you have any questions, I'd be happy to answer those for you. If not, I ask you to affirm the trial or deny the defendant's motion for a successive post-conviction petition. Yes, your honor, I'll be brief. Thank you very much. Well, if you can, before you go, I've got a question. At what point does a sentence become a de facto life sentence? In other words, I guess we look at the possible age of the defendant's release from the DOC. At what age does that become a de facto life sentence? Your honor, that question is precisely before the N.Y. Supreme Court in the Buffer case. I'm sure you're familiar with it. And that question has been answered in different ways by courts across the country and in Illinois. Some courts have expressed a desire for a point-blank rule, a specific sentence length or age that the person might be released. But that's also led to some arbitrary decisions and complications because, you know, using actionary tables or life expectancy data to determine how long someone is going to live in prison is very problematic because it's dependent on gender, race, and all sorts of other issues. But what is clear from the language in Miller and Brannon and Montgomery and in Ray's is that at its core, a de facto life sentence is one that provides a person with a meaningful opportunity to reenter society and to have an opportunity to prove maturity and rehabilitation. And a sentence, a 61-year sentence, is not a sentence that is a de facto life sentence because it's basically a coin toss as to whether he would survive his sentence, whether he would live to age 61. Well, would that be his age on projected parole date is age 61? Yes, that's the current projected parole date based on an 85 percent time for the 40-year sentence and 50 percent time on the 21-year sentence. So what if his projected parole date was age 55? Same thing? Well, that would still be a very lengthy sentence. I would be making the same argument because if you got out at age 61 or 55, you're getting out at 55, you're spending most of your whole adult life in an art correctional center. It's not likely that you're going to have the tools to get a job or to start a family or to vote or to do all the things that we associate with a meaningful life or meaningful citizenship. And at its core, that's what the language in the U.S. Supreme Court, I'm sorry, in the U.S. Supreme Court's decisions is pointing to. So would it be fair to summarize your position that unless a defendant were released in time, it's not just the fact that the defendant is released on parole when they're still breathing, but they have a chance to go out and live some type of meaningful life, be young enough to be able to do something like that? Yes, Your Honor. So just to illustrate and raise, the court said, well, a 32-year sentence, that's not a de facto life sentence. A 97-year sentence, that clearly is because that's not even survivable. There's this whole one-handed, there's a whole range of sentences in between which has produced this confusion regarding what is a de facto life sentence. But that brings us back to this broad language that we can see in the U.S. Supreme Court decisions, particularly Brown, that looks at life more broadly. And not just, like you said, it's not just being physically outside of the prison walls. It has to be a meaningful opportunity to show that you have matured and you are rehabilitated and to re-engage in society on a more meaningful level. You indicated to Justice Schmidt that you would be making the same argument if he was 55 going paroled. What is the cutoff date that you would use for Mr. Wells? Well, it's very difficult. It's difficult, one, because the sentencing hearings took place for this kind of sea change in our society and how our courts are looking at juvenile responsibility and rehabilitation potential. But it's clear from his sentencing hearing that the judge did not consider all of those number type factors. And counsel spent some time talking about the facts of this case, and we don't deny it was a very serious case. But it happened when William was 16. So my question to you is, given the current landscape of the law, what are you suggesting as the age where you would not be advancing this argument? I think that House Bill 531 is going in the right direction. And that's similar to what other legislatures are doing. They're setting up like a parole system for juvenile offenders. And so if this House Bill 531 becomes law for those offenders who are under 21 at the time of the offense, if it's a non-homicide... I don't think you're answering my question, but I'll take it as a non-answer. If you're having difficulty giving us an idea of when you think the de facto life sentence would start for Mr. Wells, then I just want you to appreciate the difficulty a court has in fixing the same number. Certainly, Your Honor, I do. And I don't think that it's possible to have a right-line rule. I can tell you that... You've answered my question. I appreciate it very much. Thank you, Your Honor. The court doesn't have any further questions. Again, I respectfully request this court to determine that the 61-year sentence, a non-homicide case, is a de facto life sentence. And the case should be remanded to either a new sentencing hearing or a second-stage proceeding. So we haven't had this chance to have those mill-type factors actually explored. Do you have enough evidence to show this rehabilitation potential to be introduced? Or, if not, again, at such a hearing, if a trier-of-facts determines that Mr. Wells is unforgivable, he is one of those rarest of juveniles, and that's the language of the U.S. Supreme Court. It's a very rare situation where the juvenile is incorrigible and just un-rehabilitatable. Thank you, Your Honor. Mr. Zeid, Mr. Leonard, thank you both for your arguments here this afternoon. We'll take this matter under advisement.